## Josiah G. Perry & another *vs.* City of Worcester.

A city, whose officers, in repairing a bridge over a river, though acting in the honest exercise of their discretion, narrow the space for the passage of the water, so as in times of freshet to set it back upon a mill, are liable for the injury thus occasioned, in an action of tort, even if the owner of the mill was a member of the committee of the city council on whose report the alteration was made.

ACTION OF TORT for the obstruction of the plaintiff's mill by the building of a bridge across the Blackstone River in such a manner as to throw back the water on the plaintiff's water wheel. The parties submitted the case to the judgment of the

court of common pleas, and, upon appeal, to this court, upon the following statement of facts:

In 1829 the county commissioners laid out a highway across said river, and awarded damages to Nathan Perry, who then owned the plaintiffs' premises, and to other owners of land through which the highway passed; and the municipal authorities of Worcester, under the direction of the commissioners, made the road, and built a wooden bridge, from which no material injury resulted to the plaintiffs' mill, which then and since has stood a short distance higher up on the river; but in very high water the plaintiffs' water wheel was slightly obstructed.

In 1849 said bridge, having become unsafe by reason of decay, was removed by direction of the city council of Worcester, and a new bridge of stone substituted therefor, the abutments of which were carried further into the river than those of the former bridge, and diminished the space for the passage of the water some feet. This bridge could have been so constructed that the width of the space of the passage of the water should not have been thus diminished; but it is not contended by the plaintiffs that the act was wanton on the part of the authorities of Worcester, nor that the bridge was not constructed in the honest exercise of their discretion; but it is alleged and can be proved by the plaintiffs that the effect of such contraction has been, when there has been a great flow of water caused by rain on the breaking up of winter, to obstruct the free and accustomed flow of the water and the passage of ice, and to set the same back upon the plaintiffs' mill, and thereby for a time to prevent the use of said mill by the plaintiffs, and to occasion other damage. The stone bridge was built according to a plan and in the manner directed by the city council, under the superintendence of a committee appointed by them.

It can be proved, if the evidence is competent, that Josiah G. Perry, one of the plaintiffs, was a member of the city council and of said committee, and with the other members of the committee signed a report to the city government in February 1849, and also signed an agreement with the contractor for building said bridge.

46*

If the court are of opinion that the plaintiffs' action can be maintained, judgment shall be rendered for them for the sum of seventy five dollars and costs; if the action cannot be maintained, the plaintiffs are to become nonsuit.

*C. Allen & P. C. Bacon,* for the plaintiffs, cited *Rowe* v. *Granite Bridge,* 21 Pick. 348; *Anthony* v. *Adams,* 1 Met. 285; *Dodge* v. *County Commissioners,* 3 Met. 383; *Parker* v. *Boston & Maine Railroad,* 3 Cush. 107; *Blood* v. *Nashua & Lowell Railroad,* 2 Gray, 137; *Mellen* v. *Western Railroad,* 4 Gray, 301; Rev Sts. *c.* 24, § 11; *c.* 25, § 6; *Rogers* v. *Kennebec & Portland Railroad,* 35 Maine, 319; *Boughton* v. *Carter,* 18 Johns. 405.

*C. Devens, Jr.* for the defendants, cited Rev. Sts. *c.* 25, § 6 *Callender* v. *Marsh,* 1 Pick. 418; *State* v. *Campton,* 2 N. H. 513 *State* v. *Milo,* 32 Maine, 57; *Monterey* v. *County Commissioners* 7 Cush. 394; *Dodge* v. *County Commissioners,* 3 Met. 380; *Rowe* v. *Granite Bridge,* 21 Pick. 348; *Stowell* v. *Flagg,* 11 Mass. 364; *Stevens* v. *Middlesex Canal,* 12 Mass. 466; *Mason* v. *Kennebec & Portland Railroad,* 31 Maine, 215; *Anthony* v. *Adams,* 1 Met. 284; *Bancroft* v. *Lynnfield,* 18 Pick. 566; *Nelson* v. *Milford,* 7 Pick. 18; *Keyes* v. *Westford,* 17 Pick. 273.

SHAW, C. J.[*] The question raised and discussed in this case was, whether the damages sustained by the plaintiffs, in the occasional flooding of their mills, by the bridge erected over the Blackstone River, should be claimed as damages and awarded as such by the city or by county commissioners, or whether an action at law will lie to recover them.

We think the distinction is well established by authorities, and founded upon just principles, that where damage is necessarily done to the property of an individual by taking his land for a highway, town way or bridge, or by changing the grade of a way, extinguishing an easement, injuring an adjacent building, draining a well or otherwise, where such work is authorized by public authority for public use, and all damage necessarily incident to such work, such works are legally regarded as warranted

---

[*] THOMAS, J. did not sit in this case.

by the public, in the exercise of the right of eminent domain they are legal and right; they are not unlawful; and therefore no action will lie, as for a tort, but damage must be sought by the owner of the property in the manner pointed out by law. *Dodge* v. *County Commissioners,* 3 Met. 380. *Ashby* v. *Eastern Railroad,* 5 Met. 368. *Babcock* v. *Western Railroad,* 9 Met. 553. *Parker* v. *Boston & Maine Railroad,* 3 Cush. 107.

But this presupposes that the public work thus authorized will be executed in a reasonably proper and skilful manner, with a just regard to the rights of private owners of estate. If done otherwise, the damage is not necessarily incident to the accomplishment of the public object, but to the improper and unskilful manner of doing it. Such damage to private property is not warranted by the authority under color of which it is done, and is not justifiable by it. It is unlawful, and a wrong, for the redress of which an action of tort will lie; whether against the immediate agent or his employers is not now a question.

In recurring to the facts agreed in the present case, it seems to us very clear that the case falls within the latter branch of the above distinction; the damage suffered by the plaintiffs was not necessarily occasioned by the building of a suitable bridge, but by building a bridge with water ways so narrowed and reduced that in times of freshet it would not discharge the water of the stream freely, and so set it back occasionally upon the plaintiffs' mills.

We think the fact that Josiah G. Perry, one of the plaintiffs, was a member of the city council and of the committee who made the report and the contract for building the bridge, cannot be relied on as a waiver of his right. He was acting in a public capacity. Probably neither he nor the other members actually knew or supposed that the bridge they recommended would cause damage to the mills, and the probability is, that it was not known till after the bridge was erected; the default was in adopting a plan for a bridge, not contrived with sufficient skill and with a proper regard to the volume of water, the strength and rapidity of the current at all seasons, and the capacity of the water ways to discharge it. For such default, we think i

cannot be held that the members of the committee were person
ally estopped from asserting their private rights.

*Judgment for the plaintiffs.*